Susan P. PRESTON, Plaintiff,

v.

COMMONWEALTH OF VIRGINIA,
et al., Defendants.

Civ. A. No. 90–0364–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

Dec. 27, 1990.

Donald Wise Huffman, Bird, Kinder & Huffman, P.C., argued (Kenneth J. Lasky, on brief), Roanoke, Va., for plaintiff.

Guy Winston Horsley, Jr., Sr. Asst. Atty. Gen., Office of Atty. Gen., argued (Mary Sue Terry, Atty. Gen., Gail Starling Marshall, Deputy Atty. Gen., Neil A.G. McPhie, Sr. Asst. Atty. Gen., on brief), Richmond, Va., for defendants.

## OPINION

TURK, Chief Judge.

Susan P. Preston filed a claim in this court alleging retaliatory discrimination by the New River Community College ("NRCC" or "College") in violation of Title VII of the Civil Rights Act of 1964, and Title IX of the Education Amendments of 1972. Jurisdiction is asserted pursuant to 28 U.S.C. sections 1331 and 1343, Title VII, and Title IX.[1]

Ms. Preston filed complaints with the Office of Civil Rights, United States De-

---

1. Plaintiff acknowledges that, though she refers to Title VI in her complaint and memorandum in opposition to defendant's motion to dismiss, she does not have a claim under Title VI of the Civil Rights Act. Title VI is relevant only in that Title IX was patterned after Title VI and "[t]he drafters of Title IX explicitly assumed that it would be interpreted and applied as Title VI had been." *Cannon v. University of Chicago*, 441 U.S. 677, 694–96, 99 S.Ct. 1946, 1956–57, 60 L.Ed.2d 560 (1979).

partment of Education and the Equal Employment Opportunity Commission ("EEOC") in September 1984 complaining of pre-selection and sex discrimination. Plaintiff now claims that as a result of filing the complaints with the Office of Civil Rights and the EEOC, she has been subjected to verbal harassment by an employee of the defendant (Ms. Dixon), and denied promotions for which she was qualified. Plaintiff further claims that the discrimination by defendant is willful. Plaintiff prays for relief of $50,000.00 in damages, reasonable attorney's fees and costs, promotion to the next available position for which she is qualified, and such other legal and equitable relief as the court may deem proper.

Initially, plaintiff filed suit against the Commonwealth of Virginia, the New River Community College, and several individuals in their official capacity as Board members of the NRCC and the State Board for Community Colleges. The claims against the individuals were dismissed pursuant to an Order entered by this Court on September 27, 1990. In the same Order, the Court indicated that it would further consider defendant's motion to dismiss the claims against the Commonwealth of Virginia and the College.

## TITLE VII

This court does not have jurisdiction over the Title VII claim presented by plaintiff. To maintain a Title VII action in federal court plaintiff must first file a complaint with the EEOC and obtain a Right to Sue letter. Title 42 U.S.C. § 2000e–5(e) (1988). Without such a letter, and barring exceptional circumstances, the court cannot properly exercise its jurisdiction over plaintiff's claim.

Plaintiff argues that a Right to Sue letter is not a jurisdictional prerequisite to filing a Title VII suit in Federal Court according to Supreme Court precedent. However, the case on which plaintiff relies is not as definitive as plaintiff contends. In *Zipes v. Trans World Airlines*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), employees of Trans World Airlines filed

charges with the EEOC alleging sex discrimination. The employees then filed a class action with the District Court and were awarded damages on their claims. On appeal, the court of appeals held that most of the plaintiffs' claims were jurisdictionally barred because a majority of those in the class were former employees of Trans World and were not properly included in the class action. In the court's opinion, the former employees were not proper members of the class action because the charges filed with the EEOC were not filed within the statutory period as to those employees. The Supreme Court allowed the former employees to recover because the class representatives had filed timely charges with the EEOC and thus the purpose of the statute was served. The Court, referring to the compliance period as a statute of limitations, noted that the requirement of filing a complaint with the EEOC in a timely fashion is subject to waiver, estoppel, and equitable tolling. Thus, the Supreme Court did not hold, as plaintiff asserts, that the Right to Sue letter need not be obtained prior to filing a Title VII action in federal court. Instead, the Supreme Court held that the time period in which the Right to Sue letter must be obtained is not inflexible.

In *Bullard v. Sercon Corporation*, 846 F.2d 463 (7th Cir.1988), the Seventh Circuit noted the limited holding in *Zipes* and held that receipt of a Right to Sue letter is a jurisdictional requirement to filing a Title VII action, while the time period in which one must file the complaint with the EEOC is only a precondition. *Id.* at 468.

Though some courts have waived the precondition of a Right to Sue letter in allowing a Title VII claim to proceed, they have done so only where it was necessary in the interest of justice. In *Gottlieb v. Tulane University of Louisiana*, 809 F.2d 278 (5th Cir.1987), the Fifth Circuit allowed plaintiff to argue retaliatory charges before the court where the initial discrimination charge was still active on appeal. In *McKee v. McDonnell Douglas Technical Services Co.*, 700 F.2d 260 (5th Cir.1983) the Fifth Circuit held that EEOC error is a

valid excuse for not obtaining a Right to Sue letter prior to filing a Title VII claim. In *McKee*, plaintiff claimed she attempted to file a complaint with EEOC but was turned away by an EEOC official. The Fifth Circuit vacated the district court's decision to dismiss plaintiff's claim and, noting that it would be error for the EEOC to turn away this particular complainant, required the district court to determine if plaintiff attempted to file the claim and if she was sent away. The Fifth Circuit further held that if the complainant was sent away, she could go forward with her claim in the district court as she was "not to be prejudiced by EEOC's failure to fulfill its duty." *Id.* at 264.

In *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992 (11th Cir.1982), the Eleventh Circuit held that the timely acquisition of a Right to Sue letter is not a procedural prerequisite to filing a Title VII claim in federal court. Instead, based in part on the reasoning of the Supreme Court in *Zipes*, the court held that the requirement of obtaining a Right to Sue letter within one hundred and eighty days of the discriminatory act is a precondition to filing a Title VII action. However, the *Jackson* court further noted that the purpose of the precondition is to "permit the EEOC first to attempt settlement of the grievance." *Id.* at 1012. This purpose must be served before claimant may proceed with his suit. *Id.* at 1004, n. 17. In the instant case, Ms. Preston did not file a complaint with the EEOC regarding her retaliation claim, thus the EEOC has not investigated plaintiff's claim and the purpose of the precondition has not been fulfilled. In addition, plaintiff does not forward any equitable basis which would convince the court to waive the procedural condition. This Court does not have jurisdiction over plaintiff's Title VII claim because plaintiff has neither fulfilled the purpose of filing with the EEOC nor has she shown why she need not comply with the filing requirement.

In response to defendant's claim that the court lacks jurisdiction over this case, plaintiff further argues that, while she did not file a complaint with the EEOC and obtain a Right to Sue letter, she should be allowed to proceed because she filed a complaint with the Office of Civil Rights within the Department of Education. To support her argument, Ms. Preston refers to 29 C.F.R. § 1691.6(a) which states that "[a] complaint of employment discrimination filed with an agency, which is transferred or referred to EEOC under this regulation, shall be deemed a charge received by EEOC."[2] However, this section has never been allowed to supersede the very important procedural condition of filing a claim with the EEOC, thus precipitating an EEOC investigation and then clearance to initiate a private cause of action. 29 C.F.R. § 1691.6(a) and the accompanying provisions speak to the cooperation among the many offices that handle Civil Rights claims. That is, the provisions note when particular departments will have sole investigatory authority over a claim and when the many departments should work together to facilitate a thorough investigation. When read as a whole, it is obvious that this regulation was not intended to alter the procedural stance of Title VII claims. Further, there is no record that the Office of Civil Rights intended to transfer the complaint to the EEOC.

## TITLE IX

Plaintiff claims that the retaliatory action alleged previously constitutes retaliatory discrimination in violation of Title IX. Plaintiff prays for relief of, among other things, $50,000.00 in damages. Defendant relies on *Guardians Association v. Civil Service Commission of the City of New York*, 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983) to argue that plaintiff's claim must be dismissed because damages are not recoverable in a Title IX action.

In *Guardians Association,* the Supreme Court, in several opinions, held that damages are not available in a Title VI action where plaintiff can not prove intentional discrimination by defendant. Thus, it is

---

**2.** Sections 1691.1—1691.13 set forth procedures for processing and resolving complaints of employment discrimination filed against recipients of federal aid subject to Titles VI and IX.

settled law that damages may not be recovered for unintentional discrimination in violation of Title VI[3] (or Title IX[4]). However, the Court did not decide whether damages are allowed for intentional discrimination in violation of Title VI. Justice White, writing for the majority, noted that, where defendant intentionally discriminates "it may be that the victim ... should be entitled to a compensatory award". *Guardians Association*, 463 U.S. at 597, 103 S.Ct. at 3230. In addition, Justice O'Connor specifically noted that she was not stating an opinion as to what remedies would be available to a plaintiff who proved intentional discrimination in violation of Title VI. This Court agrees with plaintiff that the Supreme Court has not definitively held that damages are not available in a Title IX action claiming intentional discrimination.

■ Prior to the Court's decision in *Guardians Association*, several circuit courts ruled that there was no private right of action under Titles VI and IX because the legislation states a specific remedy whereby the federal government may deny funding to any recipient entity which violates the provisions of either Title. Likewise, the Fourth Circuit has traditionally employed a strict reading of the remedies available under Title VI and Title IX. The Fourth Circuit, in *Sumpter v. Harper*, 683 F.2d 106 (4th Cir.1982), decided prior to *Guardians Association*, held that plaintiff had no private right of action for damages under Title VI. The court reasoned that "Congress did not intend Title VI to establish a broad right of action," and that the appropriate remedy for violations of Title VI appeared in the statute—Congress could refrain from funding any program permitting discrimination. *Sumpter*, 683 F.2d at 108. Because *Guardians Association* held only that one can not recover damages for unintentional violations of Ti-

tle VI, the fourth circuit case continues to be valid precedent.

Since the *Guardians Association* decision, at least one circuit court has held that a plaintiff may not recover damages for intentional discrimination in violation of Title IX. In *Franklin v. Gwinnett County Public Schools*, 911 F.2d 617 (11th Cir. 1990) the Eleventh Circuit held that a "fair reading of the various opinions [in *Guardians Association* ] discloses that a majority of Justices agreed that discriminatory intent is not a prerequisite to relief under Title VI, but that at least five justices would not allow compensatory relief to a private plaintiff absent proof of discriminatory intent."[5] The court then went on to hold that, due to the limited remedies available under legislation enacted pursuant to the Spending Clause, and because the private cause of action under Title IX is implied by the judiciary, the plaintiff could not recover damages in a private action under Title IX even where plaintiff proves discriminatory intent.

However, the United States District Court for the Middle District of Pennsylvania has held that, because the Supreme Court recognizes backpay as an appropriate remedy for intentional violations of Title VI, it would appear that monetary damages are available for intentional violations of Title IX. *Beehler v. Jeffes*, 664 F.Supp. 931 (M.D.Pa.1986). The *Beehler* court noted that, per the *Guardians* decision, six Supreme Court Justices would allow damages for intentional conduct in violation of Title VI. However, the *Beehler* court did not specify which six justices believe damages may be recovered, and this Court does not agree with the *Beehler* court's analysis. For, Justice White (joined by Justice Rehnquist) and Justice O'Connor refused to address the issue, Justice White noting that perhaps a plaintiff might be able to obtain money damages for intentional violations of Title VI, and Justice O'Connor noting

3. Four justices dissented on the basis that the remedies available under Title VI are not so limited.

4. As noted previously, Title IX was patterned after Title VI and "[t]he drafters of Title IX explicitly assumed that it would be interpreted

and applied as title VI had been." *Cannon v. University of Chicago*, 441 U.S. 677, 694–96, 99 S.Ct. 1946, 1956–57, 60 L.Ed.2d 560 (1979).

5. *Franklin*, 911 F.2d at 620.

only that she thought Justice White improperly limited the scope of *equitable relief* available to private litigants suing under Title VI. *Guardians Association* 463 U.S. at 597, 612, 103 S.Ct. at 3229, 3237. Further, Justice Powell and the Chief Judge contended that there is no implied private right of action under Title VI, thus obviously refuting the notion that damages may be obtained pursuant to Title IX. In this Court's analysis of *Guardians Association,* only four justices established that they would favor damages for intentional discrimination in violation of Title VI (and thus Title IX).

Plaintiff's claim for damages based on intentional violation of Title IX is therefore dismissed.

█ Plaintiff also requests promotion to the next available position for which she is qualified. The Court doesn't believe it may grant the relief plaintiff requests. The Court is not in a position to monitor job openings and perform an analysis of the qualifications of all job applicants prior to the time the school awards the position to an applicant. Instead, the court suggests that if plaintiff is denied promotion to a position for which she believes she is qualified, and plaintiff believes she was denied the position in retaliation for filing charges with the EEOC and Office of Civil Rights, then plaintiff should follow the proper procedures to initiate a Title VII claim first with the EEOC and then with this Court.

Though not dispositive of this case, the Court also notes that all but one of Ms. Preston's claims are unenforceable because they are barred by the Virginia statute of limitations. Va.Code § 8.01–243(a). Only the 1989 retaliatory discrimination claim is not presently barred by the statute of limitations, and as noted above, plaintiff has not requested relief which this court can afford as to that claim.