**Jerry BUCKLEY, Plaintiff,**

v.

**GALLO SALES COMPANY, Defendant.**

**No. C96–2383 TEH.**

United States District Court, N.D. California.

Nov. 6, 1996.

738

Todd M. Schneider, Schneider & McCormac, San Mateo, CA, for Plaintiff.

Nick C. Geannacopulos, Claudia Bulter, Seyfarth Shaw Fairweather & Geraldson, San Francisco, CA, for Defendant.

## ORDER

THELTON E. HENDERSON, Chief Judge.

This matter came on for oral argument before the Court on October 28, 1996, upon defendant's "12(b) motion to stay court proceedings pending arbitration of plaintiff's first cause of action and to dismiss plaintiff's second cause of action." For the reasons discussed below, this Court hereby DENIES defendant's motion.

## FACTUAL BACKGROUND

In November 1976, plaintiff, Jerry Buckley, was hired by the defendant, Gallo Sales Company, as a delivery truck driver. Plaintiff's employment was governed by the collective bargaining agreement (CBA) between Gallo and the Brotherhood of Teamsters and Auto Truck Drivers Local 85. The CBA provided for a detailed grievance and arbitration procedure applicable to all disagreements between Gallo and covered employees, including those involving suspensions and discharges.

During the period from 1993 to 1996, plaintiff sustained several work-related injuries which forced him to leave work on disability. In January 1996, plaintiff received clearance to return to work and requested reasonable accommodation by defendant, but was in-formed that he could not work until his back was stronger. On March 8, plaintiff was terminated from his employment. Several grievances were filed on plaintiff's behalf by the union. The union took each of the grievances through the first two steps of the CBA's grievance procedure, but none was ever finally resolved. Plaintiff subsequently filed a charge with the EEOC and received a notice of right to sue. On July 1, plaintiff filed a complaint against Gallo Sales alleging violations of the Americans with Disabilities Act (ADA) and the California Fair Employment and Housing Act (FEHA).

## LEGAL STANDARD

**1. Defendant's 12(b) Motion to Stay Court Proceedings Pending Arbitration of Plaintiff's First Cause of Action.**

The present issue has been raised as a "12(b) Motion to Stay Proceedings." This Court has construed this to be a 12(b)(1) Motion to Dismiss or in the Alternative to Stay Proceedings.

### a. *Preclusion of Statutory Remedy*

Defendant's assertions first raise the question of whether the arbitration requirement in the CBA *precludes* the pursuit of any related federal statutory remedies. If the arbitration agreement at issue here prevents the plaintiff from seeking a federal statutory remedy, this Court would have no basis for jurisdiction, which is founded upon plaintiff's federal question claim under the ADA. Consequently this argument is best presented as a 12(b)(1) motion for lack of subject matter jurisdiction.

Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim. Fed. R.Civ.P. 12(b)(1). Federal subject matter jurisdiction must exist at the time the action is commenced. *Morongo Band of Mission Indians v. Calif. State Board of Equalization,* 858 F.2d 1376 (9th Cir.1988). A 12(b)(1) motion may either attack the sufficiency of the pleadings to establish federal jurisdiction, or allege an actual lack of jurisdiction which exists despite the formal suffi-

ciency of the complaint. *Thornhill Publishing Co. v. General Tel. & Electronics,* 594 F.2d 730, 733 (9th Cir.1979); *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987).

Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case. Therefore, a 12(b)(1) motion must be decided before other motions, as they will become moot if dismissal is granted. 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1350. Because the court's power to hear the case is at stake, it is not limited to the allegations in the complaint but may also consider extrinsic evidence and, if that evidence is in dispute, it may weigh the evidence in order to satisfy itself that it has jurisdiction over the case. *Roberts,* 812 F.2d at 1177. However, if the jurisdictional issue is dependent upon the resolution of a factual dispute going to the merits of the case, the court may not decide those factual issues on a motion to dismiss. *Id.*

Although lack of subject matter jurisdiction is an affirmative defense, the burden of proof in a 12(b)(1) motion is on the party asserting jurisdiction. *Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221, 1225 (9th Cir.1989). Therefore, although the complaint is to be construed liberally, argumentative inferences favorable to the pleader will not be drawn, and the court will presume a lack of jurisdiction until the pleader proves otherwise. 5A Wright & Miller at § 1350; *Stock West* at 1225.

An action should be dismissed for lack of subject matter jurisdiction only if it is clear that the jurisdictional deficiency cannot be cured by amendment. *May Dept. Store v. Graphic Process Co.,* 637 F.2d 1211, 1216 (9th Cir.1980). Whether a district court possessed subject matter jurisdiction is a question of law reviewed *de novo* by the Court of Appeals. *Owner–Operators Ind. Drivers Ass'n v. Skinner,* 931 F.2d 582, 584 (9th Cir.1991); *Kruso v. International Tel. & Tel. Corp.,* 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990).

### b. *Exhaustion of Arbitration Remedy*

Defendant's second argument states that the plaintiff must *exhaust* his potential arbitration remedies before proceeding to federal court. This argument forms the basis for defendant's claim that this court should stay proceedings pending arbitration. The defendant asserts that federal courts have created an exhaustion requirement when persons enter into contracts that require arbitration of claims.

"Where there is no explicit statutory requirement of administrative remedies, the application of exhaustion rules is a matter committed to the discretion of the district court." [1] *Morrison–Knudsen Co., Inc. v. CHG Intern., Inc.,* 811 F.2d 1209, 1223 (9th Cir.1987), *See, Brown v. Rison,* 895 F.2d 533, 535 (9th Cir.1990). A judicially-created exhaustion doctrine "furnishes the district court with a method to exercise comity toward administrative agencies and to promote efficient use of judicial resources while protecting the rights of parties who have come before the court seeking relief." *Morrison–Knudsen,* at 1223.

In exercising its discretion over whether to apply a non-statutory exhaustion requirement the court employs a "balancing analysis which considers both the interests of the agency in applying its expertise, correcting its own errors, making a proper record, enjoying the appropriate independence of decision and maintaining an administrative process free from deliberate flouting and the interests of private parties in finding adequate redress for their grievances." *Montgomery v. Rumsfeld,* 572 F.2d 250, 253 (9th Cir.1978). Once the court exercises its discretion, it may allow the action to proceed immediately, it may dismiss the action pending exhaustion of administrative remedies, or it may stay its own proceedings pending administrative review. *Rodrigues v. Donovan,* 769 F.2d 1344, 1348 (9th Cir.1985).

### 2. Defendant's Motion to Dismiss Plaintiff's Second Cause of Action.

Dismissal is appropriate under Rule 12(b)(6) when plaintiff's complaint fails to

---

1. Defendant does not assert that the alleged exhaustion requirement is statutorily based.

state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The Court must accept as true the factual allegations of the complaint and indulge all reasonable inferences to be drawn from them, construing the complaint in the light most favorable to the plaintiff. *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986); *Dodd v. Spokane County,* 393 F.2d 330, 334 (9th Cir. 1968). Unless the Court converts the Rule 12(b)(6) motion into a summary judgment motion, the Court may not consider material outside of the complaint. *Powe v. Chicago,* 664 F.2d 639, 642 (7th Cir.1981). The Court must construe the complaint liberally, and dismissal should not be granted unless "it appears to a certainty that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Intake Water Co. v. Yellowstone River Compact Comm'n,* 769 F.2d 568, 569 (9th Cir.1985).

■ Rule 12(b)(6) dismissals are reviewed *de novo* by the appellate court, *Lindley v. General Electric Co.,* 780 F.2d 797, 799 n. 4 (9th Cir.1986), and are appropriate only in "extraordinary" cases. *United States v. Redwood City,* 640 F.2d 963, 966 (9th Cir.1981). Denial of a motion to dismiss is not a final judgement and is not generally appealable. *Chelsea Neighborhood Ass'n v. United States Postal Service,* 516 F.2d 378, 390 (2d Cir. 1975).

### DISCUSSION

**1. MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY ARBITRATION PROCEEDINGS**

**A. Effect of Mandatory Arbitration Agreement**

■ This Court is first presented with the question of whether a collective bargaining agreement that mandates arbitration of certain claims by an employee precludes the pursuit of remedies for those claims in federal court.

**i. The Supreme Court's Guidance in *Gardner–Denver* and *Gilmer***

The analysis begins with the guidance provided by the Supreme Court. In a unanimous decision in *Alexander v. Gardner–Den-*

*ver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Court found that the adverse resolution of a grievance under the arbitration provisions of an employee's collective bargaining agreement did not prevent him from suing his employer under Title VII. The Court noted that the grievance procedure in the collective bargaining agreement was intended to address the plaintiff's contractual rights while Title VII created an independent right to be free from racial discrimination. *Gardner–Denver,* 415 U.S., at 49–50, 94 S.Ct., at 1020–21. Through such reasoning, the Court allowed the employee to pursue remedies under both the collective-bargaining agreement and the federal statute.

In a case decided after *Gardner–Denver,* a plaintiff was required by his employer to register as a securities representative with the New York Stock Exchange. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). The registration application contained an agreement to arbitrate when a controversy arose out of the representative's employment or termination of employment. *Gilmer,* 500 U.S., at 23, 111 S.Ct., at 1650. The Court held that because the plaintiff had agreed to arbitrate his statutory claims, he was subject to arbitration unless he could demonstrate that Congress intended to preclude the waiver of a judicial forum for the statutory claim. *Gilmer,* at 35, 111 S.Ct., at 1656.

*Gilmer* does not try to reconcile itself with *Gardner–Denver's* essential view of arbitration as a process; instead it presents a new characterization of the appropriate role of arbitration. Historically, the Supreme Court considered arbitration inferior to the judicial process for the resolution of statutory claims. *Gardner–Denver Co.,* 415 U.S., at 56–58, 94 S.Ct., at 1023–25. More recently, however, the Court has stated that such suspicions are "far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes." *Gilmer,* 500 U.S., at 26, 111 S.Ct., at 1652.

Instead of presenting arbitration as an inadequate forum to arbitrate statutory claims, the *Gilmer* Court characterized it as simply another forum to resolve disputes. *Gilmer,*

at 26, 111 S.Ct., at 1652. The *Gilmer* Court went on to reject a number of historical criticisms of the arbitration process: "... that arbitration panels may be biased; that limited discovery would hinder a plaintiff attempting to prove discrimination; that lack of written opinion would result in decreased public awareness of discriminatory employment policies and ineffective review; and that employers and employees have unequal bargaining power." *Austin v. Owens–Brockway Glass Container, Inc.,* 78 F.3d 875, 880 (4th Cir.1996) (quoting *Gilmer,* 500 U.S., at 30–33, 111 S.Ct., at 1654–56).

While it adopts a different view of arbitration, *Gilmer* does not overrule *Gardner–Denver,* distinguishing itself on three grounds. First, *Gilmer* involved the "enforceability of an agreement to arbitrate statutory claims." *Gilmer,* at 35, 111 S.Ct., at 1657. *Gardner–Denver* and its progeny "involved the quite different issue of whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims." *Id.* Second, the *Gardner–Denver* line of cases "occurred in the context of a collective-bargaining agreement [and] the claimants were represented by their unions in the arbitration proceedings. An important concern therefore was the tension between collective representation and individual statutory rights ..." *Id.* Finally, *Gilmer* was decided under the Federal Arbitration Act which reflects a "liberal federal policy favoring arbitration agreements." *Id.,* citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985).

#### ii. Application of *Gardner–Denver* and *Gilmer*

Four essential questions arise from the *Gilmer* and *Gardner–Denver* lines of cases: (1) is arbitration out-of-favor in the particular context in which the case arises, (2) has the *individual* agreed to arbitrate his/her claims, (3) was the agreement pursuant to a collective bargaining agreement, and (4) is the case being decided under the Federal Arbitration Act (FAA).

#### a. Arbitration in the Context of the ADA

In the context of the ADA, arbitration appears to enjoy a strong endorsement, like the one presented in *Gilmer:* "Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including ... arbitration, is encouraged to resolve disputes arising under [the ADA]." 42 U.S.C. § 12212. *See, Golenia v. Bob Baker Toyota,* 915 F.Supp. 201, 205 (S.D.Cal.1996). Arbitration is not generally in disfavor and is an appropriate means of resolving disputes under the ADA.

#### b. Waiver of Statutory Rights

An individual may waive his or her statutory rights unless Congress has expressed the intent that the right may not be relinquished. That waiver does not have to specifically mention the statute but can simply mirror the language of the statute. However, those individual rights cannot be surrendered by a CBA. "[W]hile an individual employment contract can address both contractual and statutory rights, a collective bargaining agreement, by its very nature may only address the contractual rights of the members of the bargaining unit." *Pryner v. Tractor Supply Company,* 927 F.Supp. 1140, 1146 (S.D.Ind.1996).

This conclusion is compelled by the Court's language in *Gardner–Denver* stating that in the context of a mandatory arbitration clause in a collective bargaining agreement that "... the arbitrator has authority to resolve only questions of contractual rights, and this authority remains regardless of whether certain contractual rights are similar to, or duplicative of, the substantive rights secured by Title VII." *Gardner–Denver,* 415 U.S., at 53–54, 94 S.Ct., at 1022.

The Fourth Circuit, on the other hand, has declined to recognize this distinction between a waiver of statutory claims in a simple employment contract and a waiver in a collective bargaining agreement. "Whether the dispute arises under a contract of employment growing out of securities registration application, a simple employment contract, or a collective bargaining agreement, an agree-

ment has yet been made to arbitrate the dispute." *Austin,* 78 F.3d, at 885.

This court is in disagreement with *Austin* on two grounds. First, as noted by the District Court for the Southern District of Indiana, "*Austin* is not an accurate interpretation of federal law as it presently stands." *Pryner,* at 1145. This Court believes that the Ninth Circuit would not adopt the reasoning of the *Austin* majority but would find that the jurisprudence of the Supreme Court compels the conclusion that an agreement to arbitrate in a collective bargaining agreement does not waive potential statutory remedies.

Second, while the *Austin* majority minimizes the factual difference between an agreement to arbitrate in the context of a simple employment contract and such an agreement in the collective bargaining context, this Court agrees with the *Austin* dissent that this "... difference makes all the difference." *Austin,* at 886 (Hall, C.J., dissenting).

The Supreme Court has recognized, in several opinions, the important differences between arbitration of an individual's claim by an individual and arbitration of an individual's claim by a union. "An important concern therefore [is] the tension between collective representation and individual statutory rights ..." *Gilmer,* at 36, 111 S.Ct., at 1657. When individuals represent themselves in arbitration, they can present their cases without any competing concerns. On the other hand, when a union represents an individual in arbitration proceedings, it has to consider the potential interests of all of its members, which may be in conflict with the interests of the individual. This tension was recognized in *Gardner–Denver:* "the interests of the individual employee may be subordinated to the collective interests of all employees in the bargaining unit." *Gardner–Denver,* at 58, n. 19, 94 S.Ct., at 1024, n. 19. This concern also helped form the basis for the Supreme Court decisions in *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), and *McDonald v. City of West Branch, Mich.,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), which both allowed employees to pursue judicial remedies in spite of collective-bargaining agreements that mandated arbitration.

### c. The Federal Arbitration Act

Finally, another factor leading to the conclusion that statutory remedies were foreclosed in *Gilmer,* was the fact that the claim arose under the FAA. This case, like *Gardner–Denver,* does not arise under the FAA.

### iii. The Effect of *Gilmer* and *Gardner–Denver*

The plain language of *Gilmer* and *Gardner–Denver* and the concerns they highlight compel the conclusion that the CBA in effect between the plaintiff and defendant did not represent an agreement by the plaintiff to arbitrate his statutory claims. Where employees have "not agreed to arbitrate their statutory claims, and the labor arbitrators [are] not authorized to resolve such claims, the arbitration in those cases understandably [is] held not to preclude subsequent statutory claims." *Gilmer,* at 36, 111 S.Ct., at 1657.

### B. Exhaustion of Arbitration Remedies

■ The defendant's second issue questions whether the mandatory arbitration language in the CBA requires the plaintiff to exhaust his potential arbitration remedies before proceeding to federal court to pursue statutory remedies. In addressing the first issue, however, this Court has concluded that plaintiff's statutory claims have not been affected by the CBA and are independent of any contractual claims plaintiff may have under the CBA. Plaintiff is not required to pursue possible contractual claims before proceeding on statutory claims; therefore plaintiff is not required to exhaust the arbitral remedy for his contractual claims before filing his statutory claims in federal court. *See, Tran v. Tran,* 54 F.3d 115, 118 (2d Cir.1995) (reversing lower court holding that plaintiff was required to exhaust his arbitral remedy prior to filing his FLSA claims).

Defendant has made no showing that there is a judicially created exhaustion of arbitration remedies requirement in this circuit. Defendant first points to *Austin* for the proposition that there is an exhaustion re-

quirement, but this Court has already expressed its fundamental disagreement with the reasoning in that case. Defendant also cites *Reece v. Houston Lighting & Power Co.*, 79 F.3d 485 (5th Cir.1996) which simply notes that a lower court granted summary judgment because of plaintiff's failure to exhaust his mandatory administrative remedies under the CBA; however, the plaintiff did not appeal that ruling and it is not even addressed in *Reece.* Another case cited by defendant is *Lagrone v. Tomasso,* a one page unpublished opinion from the U.S. District Court for the District of Connecticut which does no more than cite *Gilmer* as controlling and notes that plaintiff provided no authority for a contrary view. This Court determines that no exhaustion of arbitration remedies pursuant to a CBA exists for an employee pursuing statutory claims.

## 2. MOTION TO DISMISS PLAINTIFF'S FEHA CLAIMS

 The defendant moves to dismiss plaintiff's state law claims by stating that the workers' compensation act of California provides the sole state remedy. Until January 1994, the state of California law as to the exclusivity of workers' compensation was clear. "The California Supreme Court ... interpreted Labor Code 132a broadly as the exclusive remedy for any type of employer discrimination against workers because of injuries arising out of their employment." *Jimeno v. Mobil Oil Corp.,* 66 F.3d 1514 (9th Cir.1995). *See, Langridge v. Oakland Unified School Dist.,* 25 Cal.App.4th 664, 666, 31 Cal.Rptr.2d 34 (1994). Consequently, workers under the coverage of workers' compensation could not pursue claims of discrimination on the basis of work-related injuries under the Fair Employment and Housing Act (FEHA).

### i. The 1993 Amendment to the FEHA

In 1993, however, the FEHA was amended in such a way to cast serious doubts on the continued exclusivity of workers compensation. Before the amendment, § 12993(a) of the FEHA stated that

"[t]he provisions of this part shall be construed liberally for the accomplishment of

the purposes thereof. Nothing contained in this part shall be deemed to repeal any of the provisions of the Civil Rights Law or any other law of this state relating to discrimination because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, or age...."

The legislature amended the statute, effective January 1, 1994, by adding the phrase, "... unless those provisions provide less protection to the enumerated classes of persons covered under this part."

Extensive judicial interpretation previous to the amendment had concluded that an employee's claim under the FEHA of discrimination arising out of a work related injury was preempted by the exclusive aspect of the workers' compensation law. *See, Langridge v. Oakland Unified School Dist.,* 25 Cal.App.4th 664, 666, 31 Cal.Rptr.2d 34 (1994). After the amendment, the FEHA can be read to repeal that exclusive aspect of the workers' compensation act and the jurisprudence that had confirmed it.

### ii. State Court Guidance on the Effect of the 1993 Amendment to the FEHA

The California State Supreme Court has not yet spoken on how the new language in the FEHA affects the exclusivity of the workers compensation law. This question has the potential of having far-reaching implications for the employees and employers of the state of California. Considering the state Supreme Court's silence on and the importance of the issue to California, this question would have been appropriate for certification to the California Supreme Court. Oddly, California has not, like the majority of states in the Ninth Circuit, followed the encouragement of the Supreme Court and created a process for federal courts to certify questions of state law to the California Supreme Court. *See, Los Angeles Memorial Coliseum Commission v. National Football League,* 791 F.2d 1356, 1362 (9th Cir.1986).

 Consequently, this Court must resolve this question by looking to the decisions

of California's lower courts.[2] "When the state supreme court has not ruled definitively on a point, this court looks to decisions by intermediate appellate state courts for guidance." *State Farm Fire and Casualty Comp. v. Abraio*, 874 F.2d 619, 621 (9th Cir.1989). This Court is bound to follow the decisions of intermediate courts ruling on the issue unless it is clear that the state supreme court would rule differently. *See, Tenneco West, Inc. v. Marathon Oil Comp.*, 756 F.2d 769, 771 (9th Cir.1985) ("Where an intermediate appellate state court has decided an issue of state law, that decision 'is not to be disregarded by a federal court unless it is convinced that the highest court of the state would decide otherwise."). *Gallo v. Board of Regents of Univ. of Cal.*, 916 F.Supp. 1005, 1008 (S.D.Cal.1995) ("Decisions by state appellate courts are 'data for ascertaining state law....' ")

In this context, only two intermediate California courts have given any serious consideration to the question at issue.[3] Unfortunately, those two courts have reached directly conflicting conclusions as to the effect of the 1994 amendment to the FEHA. The role of this Court, therefore, is to determine which reasoning followed by the two intermediate courts is likely to be adopted by the California Supreme Court. *See, Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514 (9th Cir.1995) ("When, as here, the state high court has not addressed the explicit question at issue the role of the panel is to determine how that court would rule.").

The first California intermediate court to address whether the 1994 amendment to the FEHA allowed an employee to pursue remedies under both the workers' compensation act and the FEHA determined that, notwithstanding the recent amendment, the plaintiff's FEHA discrimination claim based on a work-related injury was preempted by the worker's compensation act. *Cammack v. GTE California Inc.*, 48 Cal.App.4th 207, 55 Cal.Rptr.2d 837 (1996). Reasoning that the California Supreme Court's reluctance to allow implied repeals of long-standing laws required a more extensive review of legislative intent, the *Cammack* court went beyond the plain language of the statute and examined the legislative history of the amendment. The *Cammack* court did an extensive review of that legislative history and concluded that the legislature did not intend to repeal the preemptive nature of the workers' compensation act.

The more recent decision by an intermediate California court "disagrees" with the result reached in *Cammack*. *City of Moorpark v. Superior Court of the County of Ventura*, 49 Cal.App.4th 973, 57 Cal.Rptr.2d 156 (1996). The essential argument in the *Moorpark* opinion is that "[t]he exhaustive review by the *Cammack* court was unnecessary because section 12993, subdivision a, is clear on its face." *Moorpark*, at 982, 57 Cal.Rptr.2d 156. The *Moorpark* court opinion states that the intent of the legislature is clear from the plain language of the statute.

*Cammack* employs the doctrine that "implied repeals of well established rules of law are disfavored" as a springboard to examining the legislative history of the 1993 amendment to the FEHA. The cases that developed the doctrine, however, do not compel an examination of legislative history in the context of the 1993 amendment to the FEHA.

For example, in *Manufacturers Life*, the court said, "the presumption against finding

---

**2.** While this Court has the power to abstain from deciding an issue, abstention is a rarely invoked doctrine that is appropriate only in the most extreme circumstances. *See, Colorado River Water Conservation v. U.S.*, 424 U.S. 800, 814–816, 96 S.Ct. 1236, 1244–1246, 47 L.Ed.2d 483 (1976) (Catalog of the circumstances where the Supreme Court has found that abstention was appropriate). "In the absence of some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred, which would in exceptional cases warrant its non-exercise, it has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition for a judgment." *Meredith v. City of Winter Haven*, 320 U.S. 228, 234, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943).

**3.** At oral argument, Defendants inappropriately relied on *Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514 (9th Cir.1995), as having addressed the pertinent amendment to the California FEHA. While *Jimeno* discusses the 1992 amendment to the FEHA, it does not address the 1993 amendment which is here the relevant amendment for analysis.

a pro tanto repeal of a statute in the enactment of subsequent legislation on the subject is so strong that the court will do so only if the later statute revises the earlier in a manner that necessarily implies legislative intent to substitute the new statute for the older." *Manufacturers Life Ins., Co. v. Superior Court,* 10 Cal.4th 257, 276, 41 Cal. Rptr.2d 220, 895 P.2d 56 (1995). However, the language of the statute that was thought to cause a repeal was such that the "Legislative Analyst stated in an analysis of the [statute] that it 'makes no substantive change in existing law.'" *Id.,* at 267, 41 Cal.Rptr.2d 220, 895 P.2d 56.

In this context, the language of the FEHA is so strong, the legislature felt compelled to put in language that the FEHA did not repeal previous laws. Now that the language against repeals in the FEHA has been amended, the strength of the FEHA language must cause repeals in some contexts. The *necessary implication* of the 1993 amendment to the FEHA "non-repeal" language, is that all laws that afford less protection to classes enumerated in the FEHA are repealed to the extent that they preclude the FEHA from operating. *See, Theodor v. Superior Court,* 8 Cal.3d 77, 92, 104 Cal.Rptr. 226, 501 P.2d 234 (1977) ("... it should not be presumed that the Legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication.").

This Court finds that the California policy of avoiding implied repeals of well established laws is not so strong as to override the Legislative intent clearly evidenced in the plain language of the 1993 amendment to § 12993 of the FEHA.

### iii. Federal Court Guidance on the Effect of the 1993 Amendment to the FEHA

Two recent district court judges from the Southern District of California have also attempted to determine the effect of the 1993 amendment to the FEHA and have similarly found that the intent of the legislature is revealed by the plain language of the amendment. Judge Jones found that "the plain language of the statute compels the Court to view the FEHA as possibly repealing the exclusivity provisions of the worker's compensation laws, if those laws 'provide less protection' than the FEHA would." *Gallo,* 916 F.Supp., at 1009. The opinion noted that it was clear that the remedies under the FEHA were more extensive than those under the workers' compensation act. Consequently, the court held that the "1993 amendment to the FEHA reverses the prior doctrine that disability discrimination claims stemming from a work-related injury fall exclusively within the workers' compensation scheme." *Id.*

In dictum, in an unpublished opinion, Judge Rhoades reached a similar conclusion. "[I]t appears that the 1993 amendments give plaintiff greater latitude to bring a FEHA cause of action, even for discrimination on the basis of a work-related disability." *Ash v. Pacific Bell,* 1995 WL 866185, p. 2 (S.D.Cal., 1995). Relying on the plain language of the amendment, the opinion stated that the amendment "appears to repeal Labor Code § 132a to the extent courts could construe that section to preclude an action under FEHA." *Id.*

### iv. The Effect of the 1993 Amendment to the FEHA

This Court determines for the foregoing reasons that the California Supreme Court is unlikely to adopt the reasoning of the *Cammack* Court and will hold that the plain language of the 1993 amendment to § 12993 of the FEHA repealed the exclusive jurisdiction of the Workers' Compensation Appeals Board (WCAB) over claims that could potentially arise under CA Labor Code § 132a.

Section 132a of the California Labor Code provides a remedy for workers suffering discrimination who have been injured in the course of employment. The section provides the WCAB with "... full power, authority, and jurisdiction to try and determine finally all matters specified in this section subject only to judicial review ..." CA Labor Code § 132a. Sections 5300 and 5301 of the California Labor Code establish the policies of

the state which grant the appeals board exclusive jurisdiction over claims involving workers' compensation.[4]

By bringing § 132a under the jurisdiction of the appeals board, the California Legislature indicated its intention to have the exclusivity of § 5300 apply to allegations that a termination of employment was a result of discrimination on the basis of injuries incurred at work.[5] Consequently, California Courts have determined that all claims that could be brought under § 132a are subject to the exclusive jurisdiction of the Workers' Compensation Appeals Board, which provides the sole potential remedy. *See, Portillo v. G.T. Price Products,* 131 Cal.App.3d 285, 182 Cal.Rptr. 291 (1982); *Fortner v. Safeway Stores, Inc.,* 229 Cal.App.3d 542, 280 Cal.Rptr. 409 (1991).

The question facing this court is whether the exclusivity provisions applicable to § 132a preclude a claim of "termination on basis of disability incurred at work" from being brought under the FEHA after its amendment. It is clear that the FEHA provides a potential remedy. The California Fair Employment Practice Act was enacted in 1959 and codified as part of the FEHA in 1980. "The law establishes that freedom from discrimination in employment on specified grounds ... is a civil right and such discrimination is against public policy." *Peralta Community College Dist. v. Fair Employment & Housing Com.,* 52 Cal.3d 40, 44, 276 Cal.Rptr. 114, 801 P.2d 357 (1990). The purpose of the act is announced as, to "provide effective remedies which will eliminate such discriminatory practice." CA Govt. Code § 12920.

An employee bringing a claim of discrimination before a court under the FEHA has a number of potential remedies: a cease and desist order, actual damages, punitive damages, an order for reasonable accommodations, and attorney's fees. CA Govt.Code § 12970, *Commodore Home Systems, Inc. v. Superior Court,* 32 Cal.3d 211, 215, 185 Cal. Rptr. 270, 649 P.2d 912 (1982).

It is clear that the FEHA was enacted to provide broad protection to employees and that any law that prevents the FEHA from providing that protection is contrary to the purpose of the FEHA. Section 132a is such a law, but in the past, the "non-repeal" language of § 12993 prevented the creation of a cause of action in the FEHA from affecting the exclusive jurisdiction of the WCAB over claims under § 132a. However, as is easily inferred by the plain language of the 1993 amendment, any law that precludes a cause of action under the FEHA and provides less of a potential remedy should be considered repealed or preempted by the FEHA.

It is readily apparent that CA Labor Code § 132a provides less protection than the FEHA for workers discriminated against on the basis of work-related injuries. *See, Gallo,* 916 F.Supp., at 1009 ("It seems clear that the remedies available under the FEHA are more comprehensive both in scope and in amount of recovery"), and *Moorpark,* 49 Cal. App.4th at 983, 57 Cal.Rptr.2d 156 ("we conclude that the FEHA laws offer more protection").

The only aspect of section 132a that is in tension with the FEHA is the exclusive remedy provision; therefore it is the only aspect of § 132a that should be deemed repealed by the FEHA.[6] The fact that an employee may

**4.** "All the following proceedings shall be instituted before the appeals board and not elsewhere ... (a) For recovery of compensation, or concerning any right or liability arising out of or incidental thereto." CA Labor Code § 5300. *See, Pickrel v. General Telephone Co.,* 205 Cal. App.3d 1058, 1063, 252 Cal.Rptr. 878 (1988) ("... since section 132a specifically addressed the problem of wrongful discharge for discrimination for the exercise of workers' compensation remedies, the exclusive jurisdiction within which the employee may pursue a claim was before the WCAB.").

**5.** Mirroring the exclusive jurisdiction requirements of §§ 5300 and 5301 are the exclusive

remedy provisions of the Workers' Compensation Act, which bar a person from bringing a civil action for discrimination based on the same injury that served as the basis for a claim under the Workers' Compensation Act. CA Labor Code §§ 3600, 3602. *See, Usher v. American Airlines,* 20 Cal.App.4th 1520, 1527, 25 Cal.Rptr.2d 335 (1993).

**6.** The *Cammack* court considers it "illogical" that the 1993 amendment would only repeal the exclusivity provision of § 132a. *Cammack,* at 228, 55 Cal.Rptr.2d 837. On the contrary, what

present a claim in front of the WCAB under § 132a on the same facts that create a cause of action under § 12993 does not lessen the protections of the FEHA; quite the contrary, the potential remedy under workers' compensation affords further protection to workers who have suffered from discrimination by their employers.

This Court believes that the California Supreme Court will hold that the plain language of the FEHA acts to repeal the exclusive jurisdiction over employees alleging discrimination on the basis of a disability incurred at work. Consequently, this Court holds that the plaintiff may bring an action for physical disability discrimination pursuant to the California Fair Employment and Housing Act, CA Govt.Code §§ 12920 and 12940, in federal court as supplemental claims to his cause of action under the Americans with Disabilities Act.

*CONCLUSION*

This Court has jurisdiction over plaintiff's claim that his termination violated the ADA. The mandatory arbitration clause in the collective bargaining agreement does not preclude plaintiff from pursuing statutory remedies in federal court, nor has any exhaustion of arbitration remedies requirement been established that would prevent plaintiff from bringing his claim before completing the arbitration process.

Plaintiff may also pursue his supplemental claim for physical disability discrimination under the California FEHA. After the 1993 recent amendment to the FEHA, workers' compensation is not the exclusive remedy for such an action.

For the reasons discussed above, and good cause appearing, defendant's 12(b) motion to stay proceedings and motion to dismiss are hereby DENIED.

**IT IS SO ORDERED.**

is illogical, is that the amendment would repeal all of § 132a when only the exclusivity aspect of

the section is in conflict with the purpose of the FEHA.